

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00278-CR

---

JESUS SANCHEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 287th District Court
Parmer County, Texas
Trial Court No. 3835, Honorable Kathryn H. Gurley, Presiding

---

July 29, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Jesus Sanchez, appeals his conviction for burglary of a habitation[1] and resulting 12-year sentence. In his sole issue, Appellant contends the evidence was legally insufficient to support his conviction. We disagree and affirm the judgment.

---

[1] *See* TEX. PENAL CODE ANN. § 30.02(a)(3).

## BACKGROUND

On September 18, 2023, Appellant and another man visited John David Gulley's rural home near Muleshoe, asking to purchase a white Ford pickup parked on Gulley's property. Gulley explained he didn't own the vehicle but thought it likely belonged to the farmer who leased his land or one of the farmer's workers.

The next day, Gulley returned home from work around 4:30 p.m. to find an unfamiliar red car blocking his usual parking spot near the garage. An extension cord ran from inside the garage to the white Ford pickup, which hood was raised. Initially assuming the prior day's visitors had found the truck's owner and arranged a purchase, Gulley parked behind the red car.

As Gulley exited his vehicle, Appellant emerged from behind the house. When Gulley asked him to move the red car, Appellant refused, claiming he didn't believe Gulley lived there. Despite Gulley's showing his mail and driver's license bearing the property's address, Appellant persisted in stating his disbelief and insisted they drive to the Muleshoe Police Department to meet his attorney.

After waiting over an hour with no attorney appearing, Gulley requested assistance. Lieutenant Leonardo Aviles responded and spoke with both men. That is when Appellant told Aviles he had purchased Gulley's home for $80,000 cash the day before and was waiting for his lawyer with the paperwork. Gulley denied any such sale, adding that he and his brother owned the property as an inheritance from their parents.

During the encounter, Aviles discovered Appellant had outstanding traffic warrants and arrested him. While releasing Appellant's vehicle to his father, Arturo Sanchez, Aviles

2

noticed a set of keys in the cup holder of Appellant's vehicle. Arturo delivered the keys to Aviles, explaining they did not belong to his son.

Gulley returned home to discover his back door had been forced open. He called the Parmer County Sheriff's Office, and Deputy Bobby Martinez responded.

Deputy Martinez went inside Gulley's house to ensure no one was still there and to assess what might have been taken. He observed that the doorknob and lock at the back of the home showed damage from forced entry. The back door opened into a small mudroom leading to the kitchen and dining room. Martinez discovered that Gulley's phone power bank had been moved from the dining room table to the back porch, but valuable items located deeper in the house (laptop, television, checkbooks, jewelry, and guitar) remained undisturbed.

Nothing was reported missing, but Gulley mentioned that when he encountered Appellant, Appellant appeared to be carrying keys resembling some that normally hang on a keyholder inside his home.[2]

Deputy Martinez found the garage ransacked. The attic door was open—something Gulley testified was never the case. Gulley explained that when he left for work that morning, his car battery charger had been inside the garage. When he returned, the charger was outside next to the white Ford pickup, connected by extension cord that ran from the garage.

---

[2] At trial, Gulley clarified that the keys "were in the kitchen, right behind the door where you come in" and would be the first thing someone would see when entering through the back door.

Martinez contacted the Muleshoe Police Department and took custody of the keys Arturo had removed from Appellant's vehicle. When Martinez sent Gulley a photo of the keys, Gulley identified them as keys missing from his home.

**ANALYSIS**

In his sole issue, Appellant argues the evidence is insufficient to support his burglary conviction. Burglary of a habitation under Penal Code section 30.02(a)(3) requires proof that Appellant entered Gulley's residence without effective consent and committed or attempted to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(3); *Speed v. State*, No. 07-13-00034-CR, 2015 Tex. App. LEXIS 171, at *5–7 (Tex. App.—Amarillo Jan. 9, 2015, pet. ref'd) (mem. op., not designated for publication). A defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary so long as possession was personal, recent, unexplained, and involved a distinct and conscious assertion of right to the property. *Rodriguez v. State*, 549 S.W.2d 747, 749 (Tex. Crim. App. 1977).

When deciding whether evidence is sufficient to support a conviction, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).

Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge accurately sets out the law, is authorized by the indictment, and adequately describes the particular offense for which the defendant was tried. *Id.*

4

The jury is the exclusive judge of witness credibility. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). We defer to the jury's credibility determinations and resolve conflicts in favor of the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury may also choose which reasonable inferences to draw from the evidence. *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009).

Circumstantial evidence is as probative as direct evidence and alone can establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Each fact need not "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

Here, the evidence paints a sufficient picture for a rational jury to find Appellant guilty of burglary beyond a reasonable doubt. Appellant visited Gulley's home expressing interest in a truck. The next day, he returned without invitation while Gulley was at work. Gulley discovered his battery charger had been moved from the garage to outside, connected near the truck Appellant had inquired about. The garage was ransacked, its attic door open. All this occurred while Gulley was at work, without his knowledge or permission. Yet there was Appellant on the scene, emerging from behind the house—the same area where the back door was later discovered as having been forced open.

The evidence regarding Gulley's keys also provides strong support for the conviction. Gulley testified the keys normally hung on a keyholder inside his home, readily visible to anyone entering through the back door. When Gulley encountered Appellant, he noticed Appellant appeared to be carrying keys that resembled those from his kitchen.

After Appellant's arrest, his father found keys in Appellant's vehicle and turned them over to police. Gulley identified them as his.

Under *Rodriguez*, the evidence regarding the keys permits a reasonable factfinder to infer Appellant's guilt:

- Personal possession: the keys were found in his vehicle;

- Recent possession: occurring on the same day as the break-in;

- Unexplained possession: the record supports no innocent means for how Appellant came to possess keys that had been inside Gulley's house;

- Assertion of right: Appellant carried them on his person and in his vehicle while simultaneously claiming ownership of Gulley's home.

It was the jury's responsibility to evaluate the evidence it saw and heard. Viewing all evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found each essential element proven beyond a reasonable doubt.

### CONCLUSION

We overrule Appellant's sole issue and affirm the judgment of the trial court.


Lawrence M. Doss
Justice


Do not publish.